UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| KENTUCKY GAMBLING RECOVERY LLC, | ) ) ) |
| Plaintiff, | ) Case No. 3:25-cv-00054-GFVT ) ) **OPINION** |
| v. | ) **&** ) **ORDER** |
| KALSHI INC., *et al.*, | ) ) |
| Defendants. | ) ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Plaintiff Kentucky Gambling Recovery LLC's Motion for Remand. [R. 20]. Resolving this motion requires the Court to evaluate several procedural and legal questions. This dispute poses two questions. First, do the "events contracts" offered by the Defendants violate Kentucky's gambling laws? And, if so, can Kentucky Gambling Recovery LLC recover damages for this violation under Kentucky's Loss Recovery Act? This Opinion does not answer either of these questions and ultimately need not resolve them. Instead, the Court focuses on a different inquiry; namely, whether this case belongs in state court or federal court. Because the Court is convinced that it does not have jurisdiction to hear this case, the Court **GRANTS** Plaintiff's motion to remand this case to the Franklin Circuit Court.

**I**

This case, while legally complex, asks a straightforward series of questions. First, whether prediction markets are illegal under Kentucky's gambling statutes; and second, if such event contracts are illegal under Kentucky's statutes, whether the plaintiff can recover under the Commonwealth's "Statute of Anne," codified at Ky. Rev. Stat. § 372.040. Plaintiff Kentucky Gambling Recovery LLC sought an answer to these questions when it filed a single-count

lawsuit against Defendants Kalshi, Inc., KalshiEX LLC, Kalshi Klear Inc., Kalshi Trading LLC, Susquehanna International Group LLP, Susquehanna Government Products, LLLP, Robinhood Markets, Inc., Robinhood Derivatives, LLC, and Webull Corporation in the Franklin County Circuit Court on June 11, 2025. On October 20, 2025, the defendants removed this case to federal court.[1] [R. 1]. On November 19, 2025, Plaintiff filed a Motion to Remand. [R. 20]. Responding separately, the Robinhood defendants and the remaining Kalshi defendants filed responses in opposition to the remand motion on December 10, 2026.[2] [Rs. 26, 27].

Due to the inherent complexity of a ten-defendant lawsuit, it is important for the Court to orient the parties in relation to one another. Kalshi Inc. is the parent holding company of Kalshi Klear, Inc., KalshiEX, and Kalshi Trading. [R. 1 at 3]. KalshiEX LLC is a "financial services company that operates a derivatives exchange and prediction market on which users can buy and sell financial products known as 'event contracts.'" [R. 1 at 2]. Kalshi Klear LLC provides clearing services for event contracts traded on the Kalshi designated contract market (DCM) platform. *Id.* Kalshi Trading LLC participates on and provides liquidity for the contracts traded on the KalshiEX DCM platform. *Id.* at 3. The Commodity Futures Trading Commission (CFTC), pursuant to the Commodity Exchange Act of 1936, 7 U.S.C. § 1, *et seq.*, federally regulates KalshiEX's DCM. *Id.* at 2.

Robinhood Derivatives, LLC, is a federally registered derivatives intermediary that accepts orders from customers for Kalshi's event contracts. *Kentucky Gambling Recovery LLC v. Kalshi Inc. et al.*, Case No. 3:25-cv-00053-GFVT, at [R. 1]. Robinhood Markets, Inc., is the

---

[1] Initially, this case appeared on the Court's docket twice at 3:25-cv-00053 and at 3:25-cv-00054, due to separate removal actions by two sets of different defendants. The Court consolidated the cases on November 18, 2025. [R. 19].

[2] The "Robinhood defendants" refer to Robinhood Derivatives, LLC, and Robinhood Markets, Inc. The "Kalshi defendants" refer to Kalshi Inc., Kalshi Klear Inc., Kalshi Klear LLC, Kalshi Trading LLC, KalshiEX LLC, Susquehanna Government Products, LLP, Susquehanna International Group, LLP, and Webull Corporation. These distinctions are made in light of the respective filing relationships between these two groups of defendants.

parent company of Robinhood Derivatives. [R. 1-1 at 7]. WeBull Corporation is a financial services holding company that Plaintiff alleges partnered with Kalshi to offer a prediction market hub. *Id.* at 7–8. Susquehanna Government Products, LLLP, is a wholly owned subsidiary of Susquehanna International Group LLP, who Plaintiff alleges operates as an institutional market maker for Kalshi, buying and selling event contracts on the platform. *Id.* at 5–6.

Kentucky Gambling Recovery LLC is a company "formed under the laws of Delaware." *Id.* at 4. In its complaint, Plaintiff states that it has no relationship to any gamblers in Kentucky and has not colluded with any gamblers in bringing this action. *Id.* In its filings, Plaintiff describes itself as "an individual company suing as a relator in its own name and for its own benefit." [R. 20-1 at 2].

It is also important to briefly list the citizenship of the parties for purposes of diversity jurisdiction. Plaintiff is a citizen of Florida. [R. 1 at 10–11]. It is undisputed that the Kalshi defendants are citizens of Delaware and New York. [R. 27 at 15]. The Robinhood defendants are citizens of Delaware and California. [R. 1 at 12]. Both Susquehanna defendants have Florida citizenship. [R. 20-1 at 19]. Webull Corporation is also a citizen of Florida. *Id.*

The defendants oppose the Motion to Remand based on three legal theories. First, the defendants argue that the Court has federal-question jurisdiction because the Plaintiff's cause of action necessarily raises a federal question. Second, defendants argue that the Court has jurisdiction under the Class Action Fairness Act. Third, the defendants argue that diversity jurisdiction exists because the Plaintiff fraudulently joined Webull Corporation and the Susquehanna defendants. The Court addresses each argument in turn.

## II

A defendant may remove a civil action brought in state court to federal court if the action is one over which the federal court could have exercised original jurisdiction. *See* 28 U.S.C. §

3

1441(a); *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 134 (2005). Federal courts have jurisdiction over two types of cases: first, those involving a federal question, and second, those in which there is complete diversity between the parties and the amount in controversy exceeds the threshold amount. 28 U.S.C. § 1331; *id.* § 1332.

A

The Court first addresses the question of whether federal-question jurisdiction exists due to the existence of a predominant federal issue. Kentucky, like all other states, regulates gambling and wagering. Ky. Rev. Stat. §§ 528.010–.150; *id.* § 230.070–.990. Plaintiff's sole claim cites relief under Kentucky's codification of the Statute of Anne, Ky. Rev. Stat. § 372.040, which the General Assembly included under statutes addressing contracts against public policy. Courts also refer to this statute as the Loss Recovery Act. *Commonwealth ex rel. Brown v. Stars Interactive Holdings (IOM) Ltd.*, 617 S.W.3d 792, 796 (Ky. 2020). "Where a losing gambler fails to bring a recovery action under the provisions of KRS 372.020 within six months, KRS 372.040 permits a third-party cause of action to be brought against the winning gambler by any other person and allows for the recovery of treble damages." *Kirby v. Keeneland Assoc., Inc.*, 672 S.W.3d 212, 216 (Ky. App. 2023). In other words, a third party—completely unrelated to the illicit gambling transaction—can sue the party who benefitted from an illegal gambling transaction. *See Tabet v. Morris*, 285 S.W.2d 143, 144 (Ky. 1955) (affirming judgment awarding treble damages based on the gambling losses of plaintiff's minor son); *see also Brown*, 617 S.W.3d at 798–99 (holding that the Commonwealth of Kentucky was a "person" under the Loss Recovery Act where the statute did not limit the definition to a natural person).

The Loss Recovery Act includes a safe harbor provision stating that "the terms and provisions of this chapter do not apply to betting, gaming, or wagering that has been authorized,

4

permitted, or legalized, including, but not limited to, all activities and transactions permitted under KRS Chapters 154A, 230, and 238." Ky. Rev. Stat. § 372.005. Chapter 154A relates to the state lottery system. *See* Ky. Rev. Stat. § 154A.010–.990. Chapter 230 refers to the Kentucky Horse Racing and Gaming Commission, the state entity that regulates horse racing, sports wagering, and charitable gaming in Kentucky. *See id.* § 230.010–.990. Chapter 238 regulates charitable gaming. *See id.* § 238.010–.995.

    The parties dispute whether this claim is truly a state claim or whether it arises under federal law. The Sixth Circuit applies the well-pleaded complaint rule to determine whether a complaint arises under federal law. *Roddy v. Grand Trunk W. R.R. Inc.*, 395 F.3d 318, 322 (6th Cir. 2005). "[F]ederal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). The well-pleaded complaint rule requires courts to "examine the well pleaded" allegations of the complaint and ignore potential defenses. *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 6 (2003). Because the plaintiff is the "master of his complaint," a plaintiff's "state law claim cannot be 'recharacterized' as a federal claim for the purposes of removal." *Loftis v. United Parcel Service, Inc.*, 342 F.3d 509, 515 (6th Cir. 2003) (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987)). Accordingly, a case may not be removed to federal court solely on the basis of a federal defense, even where the plaintiff anticipates the defense in their complaint and even where both parties concede that the federal defense is the only true question. *Franchise Tax Bd. of Cal. V. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 13–14 (1983); *Roddy*, 395 F.3d at 322 (collecting cases). In the context of analyzing potential federal defenses, state courts are generally presumed competent to interpret and apply federal law. *Mikulaski*, F.3d at 560 (citing *Zwickler v. Koota*, 389 U.S. 241, 245 (1967)).

There are, of course, exceptions to the well-pleaded complaint rule. Through these exceptions, "a defendant may force a plaintiff into federal court despite the plaintiff's desire to proceed in state court." *Mikulski*, 501 F.3d at 560. Potentially relevant to this case are two exceptions. First is the complete-preemption doctrine, holding that removal is proper "when a federal statute wholly displaces the state-law cause of action through complete preemption." *Beneficial Nat. Bank*, 539 U.S. at 8. Second is the substantial-federal-question doctrine, which applies "where the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Franchise Tax Bd.*, 463 U.S. at 9.

The Supreme Court has found complete preemption in only three classes of cases: Section 301 of the Labor Management Relations Act of 1947 (LMRA), the Employee Retirement Income Security Act of 1975 (ERISA), and the National Bank Act. *Mikulski*, 501 F.3d at 563–64. Complete preemption is a limited rule, and courts across the country recognize that the Commodities Exchange Act does not completely preempt state law claims. *See, e.g., Dennis v. Hart*, 724 F.3d 1249, 1254 (9th Cir. 2013) ("[T]he Exchange Act does not so fully displace state law as to invoke complete preemption"); *see also W & W Farms, Inc. v. Chartered Sys. Corp. of New York*, 542 F. Supp. 56, 60 (N.D. Ind. 1982) (action based on a state statute is not preempted where the statute envisioned no administrative agency involvement which might conflict with the Commodity Futures Trading Commission's jurisdiction); *see also* 79A *C.J.S. Securities Regulation* § 645 ("[a]lthough many types of state-law actions are not preempted by the Commodity Exchange Act, some are").

The second exception—the substantial federal question doctrine—anchors the crux of this first jurisdictional dispute. The substantial federal question doctrine holds that "a state law cause of action may actually arise under federal law, even though Congress has not created a

private right of action, if the vindication of a right under the state law depends on the validity, construction, or effect of federal law." *Mikulski*, 501 F.3d at 565. The mere presence of a federal issue in a state law cause of action does not automatically confer federal removal jurisdiction. *Id.* In *Grable & Sons Metal Products, Inc., v. Darue Engineering & Mfg.*, 545 U.S. 308, 310–11 (2005), the Supreme Court announced a new framework for determining whether a substantial federal question exists that warrants resolution by a federal, rather than state, court. After *Grable*, the substantial-federal-question doctrine has three parts: (1) the state-law claim must necessarily raise a disputed federal issue; (2) the federal interest in the issue must be substantial; and (3) the exercise of jurisdiction must not disturb any congressionally approved balance of federal and state judicial responsibilities. *Mikulski*, 501 F.3d at 568 (6th Cir. 2007) (citing *Grable*, 545 U.S. at 314). However, the Supreme Court has clarified that the *Grable* test should apply to "pure issues of law . . . that could be settled once and for all and thereafter would govern numerous" similar cases. *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 700 (2006). The Court in *Empire Healthchoice* further distinguished *Grable* by pointing out that the dispute in *Grable* "centered on the action of a federal agency and its compatibility with a federal statute," whereas the instant claim was not "triggered . . . by the action of any federal department, agency, or service." *Id. Grable* thus represents a "slim category" of cases in which a state-law claim may arise under the federal law for purposes of federal question jurisdiction. *Id.* at 701.

The parties vigorously dispute whether Kentucky Gambling Recovery's single-count state law claim belongs in federal court. Both the Robinhood defendants and the Kalshi defendants argue that the *Grable* test applies. *See* [R. 26 at 6; R. 27 at 6]. Kentucky Gambling Recovery questions the applicability of *Grable* and argues throughout its briefing that the defendants' attempt to fit this case into *Grable*'s narrow exception is misplaced. [R. 20-1 at 3].

7

Kentucky Gambling Recovery emphasizes that any federal issue is a defense that plays no part of the jurisdictional analysis. The Court will first look at the plaintiff's well-pleaded complaint and then turn to the substantial federal question doctrine. *City of Covington, Kentucky v. Duke Energy Kentucky, Inc.*, No. 3:24-CV-00076-GFVT, 2025 WL 1588744, at *3 (E.D. Ky. June 5, 2025).

**1**

Plaintiff's point is well-taken. Under any reading of the well-pleaded complaint rule, Kentucky Gambling Recovery has not presented a federal question on the face of the complaint. *Caterpillar*, 482 U.S. at 392. Their sole cause of action arises under Kentucky's Loss Recovery Act. Try as they may, the Defendants cannot recharacterize plaintiff's single-count state law claim as a federal claim for the purposes of removal. *Loftis*, 342 F.3d at 515. Defendants raise several well-reasoned defenses to any liability under the Loss Recovery Act, including by contending that the event contracts at issue are likely to fall within the Act's safe harbor provisions. *See* [R. 26 at 8–14; R. 27 at 6–10]. Nonetheless, these are defenses to Plaintiff's claim, and a case may not be removed to federal court solely on the basis of a federal defense. *Franchise Tax Bd.*, 463 U.S. at 13–14. The applicability of any federal defense to Plaintiff's state law claim can be ably addressed by the state courts, who are presumed competent to interpret and apply federal law, particularly as a defense to a state law claim. *Mikulaski*, F.3d at 560.

Federal jurisdiction is unavailable "unless it appears that some substantial, disputed question of federal law is a *necessary element* of one of the well-pleaded state claims, or that one or the other claim is 'really' one of federal law." *Franchise Tax Bd.*, 463 U.S. at 13 (emphasis added). Defendants argue that the legality of a federal law, specifically the Commodity Exchange Act, presents a necessary element of Plaintiff's state law claim. The Robinhood

defendants argue that the safe harbor provision of Kentucky's Loss Recovery Act "necessarily raises an embedded federal law issue: whether the event contract transactions challenged by Plaintiff are authorized, permitted, or legal under the CEA." [R. 26 at 7]. The Kalshi defendants likewise argue that legality is an element of a Loss Recovery Act claim, rather than an affirmative defense. [R. 27 at 9].

"When a statute has 'exemptions laid out apart from the prohibitions,' and the exemptions "expressly refe[r] to the prohibited conduct as such,' the exemptions ordinarily constitute 'affirmative defense[s]' that are 'entirely the responsibility of the party raising' them." *Cunningham v. Cornell University*, 604 U.S. 693, 701 (2025) (quoting *Meacham v. Knolls Atomic Power Laboratory*, 554 U.S. 84, 91 (2008)). This framework applies to Kentucky's Loss Recovery Act. The statute exempts "betting, gaming, or wagering that has been authorized, permitted, or legalized[.]" Ky. Rev. Stat. § 372.005. The viability of Plaintiff's claim hinges on the legality of events contracts under the CEA as applied to Kentucky's gambling restrictions. In the 2023 *Kirby* decision, the Kentucky Court of Appeals held that the plaintiffs in that case were not entitled to relief under the Loss Recovery Act because "the plain language of [the safe harbor] provision means that no cause of action will lie where the challenged wagering was authorized, permitted, or legalized (retroactively or otherwise)." *Kirby*, 672 S.W.3d at 216. The Court affirmed the lower court's order dismissing the case. *Id.* at 217. The logical reading of this holding suggests that the safe harbor provision arms defendants with a Rule 12(b)(6) defense, or its state-law equivalent.

Defendants raise compelling defenses to the Plaintiff's state-law claim. But they are, nonetheless, defenses. The Court is convinced that Plaintiff's well-pleaded complaint does not contain a federal issue on its face, and that Defendants' reference to the Commodity Exchange

9

Act vis-à-vis the Loss Recovery Act's safe harbor provision is merely a possible or anticipated defense. "But the Court will, in the interest of thoroughness, consider the *Grable* factors as the parties have disputed them, assuming *arguendo* that the well-pleaded complaint rule was satisfied." *Duke Energy*, 2025 WL 1588744, at *4.

2

Under the substantial federal question doctrine, federal question jurisdiction exists when (1) the state-law claim necessarily raises a disputed federal issue, (2) the federal interest is substantial, and (3) the exercise of jurisdiction must not disturb any congressionally-approved balance of federal and state judicial responsibilities. *Mikulski*, 501 F.3d at 568 (quoting *Grable*, 545 U.S. at 314). The Supreme Court has made clear that "*Grable* is to be read narrowly." *Id.* The Supreme Court has also suggested that *Grable* jurisdiction is appropriate only where the case "presents a nearly pure issue of law, one that could be settled once and for all and would govern numerous [similar] cases." *Empire Healthchoice*, 547 U.S. at 700. The Court will address each of these elements in turn.

i

The parties disagree as to whether Kentucky Gambling Recovery's complaint raises a disputed federal issue. The plaintiff argues that any appeal to federal law operates as a federal defense and thus "forecloses Defendants' federal-question jurisdiction theory." [R. 20-1 at 6]. Defendants argue that the federal law is disputed because "Plaintiff must prove that federal law does not permit these event contracts" and that "Defendants will argue just the opposite." [R. 26 at 14]. Plaintiff relies on the basis that Defendants' activities are illegal under Kentucky state law and that Defendants simply raise a defense that is not sufficient for federal question jurisdiction. [R. 20-1 at 6–7]. Between these two competing theories, it is not clear that the Plaintiff's theory

raises a disputed federal issue. Plaintiff has not—and could not—argue that the Commodity Exchange Act is somehow unlawful. *See generally* [R. 1-1]. Instead, it advances the argument that the Defendants' conduct is illegal under Kentucky's laws criminalizing unlawful gambling activity. *Id.* at 19–21. This does not necessarily raise a federal issue, even if the parties may, in all likelihood, spar over the applicability of the CEA to the Loss Recovery Act's safe harbor provision.

## ii

The Court next asks whether the federal interest is substantial. Under *Mikulski*, four factors guide this determination:

> (1) whether the case includes a federal agency, and particularly, whether that agency's compliance with the federal statute is in dispute; (2) whether the federal question is important (i.e., not trivial); (3) whether a decision on the federal question will resolve the case (i.e., the federal question is not merely incidental to the outcome); and (4) whether a decision as to the federal question will control numerous other cases (i.e., the issue is not anomalous or isolated).

*Mikulski*, 501 F.3d at 570. The Court considers these factors in aggregate, and no one factor controls the outcome of the analysis. *Id.*

The case does not directly include a federal agency, and there is no factual dispute as to whether a federal agency has or has not complied with the federal statute in dispute. The Commodity Futures Trading Commission (CFTC) regulates the exchanges at issue, but the CFTC is not a party to the case and informs the analysis only by way of background into Defendants' offerings on their platforms. The second sub-factor requires the Court to determine whether the question to be resolved is important. The resolution of the issue will not "require the analysis and interpretation of federal law" but rather the federal law's impact on Kentucky state law. *See id.* at 571. Any future analysis and interpretation will focus squarely on Kentucky's

11

gambling statutes, rather than on any federal law. To this Court's knowledge, the Commission has not issued a rule to interpret whether general sports-related offerings are a legal form of derivative contracts rather than bets. *See id.* (finding that the disputed tax issue was "not particularly important to the federal government" where the Internal Revenue Service had not interpreted the tax provision at issue). The Court is satisfied that the federal government does not find this particular question particularly important.

The third sub-factor asks whether resolution of the question is dispositive to the case. The Court again considers this case to more aptly focus on the interpretation of Kentucky's own statutes, rather than on the interpretation of the Commodities Exchange Act. Kentucky's courts could very well rule that Defendants' activities fall within the safe harbor provision of their gambling statutes. Kentucky's courts could similarly find that the Defendants' registration with the CFTC does not preempt state oversight through the state's interpretation of their own gambling statutes.

Courts across the country have addressed the question of whether the CEA preempts state law. There is no clear holding one way or the other, and no Circuit has spoken on this issue. But the cases reviewed by the Court suggest that most Courts look askance at Kalshi's arguments. *See, e.g., KalshiEX LLC v. Martin*, 793 F. Supp. 3d 667 (D. Md. 2025) (holding that Kalshi lacked likelihood of success on preemption theories and denying preliminary injunction seeking declaration that the CEA preempted Maryland's gaming laws as applied to the company); *Commonwealth v. Kalshiex, LLC*, No. 2584CV02525, 2026 Mass. Super. LEXIS 2, at *18–20 (Jan. 20, 2026) (holding that the CEA does not preempt Massachusetts's Sports Wagering Law); *KalshiEX, LLC v. Hendrick*, No. 2:25-CV-00575-APG-BNW, 2025 WL 3286282, at *6–9 (D. Nev. Nov. 24, 2025) (finding that Kalshi was not likely to succeed in showing that its sports-

related contracts are swaps within the CEA's meaning); *but see KalshiEx LLC v. Orgel,* No. 3:26-CV-00034, 2026 WL 474869, at *7 (M.D. Tenn. Feb. 19, 2026) (issuing preliminary injunction and finding that Kalshi is likely to succeed on the merits because sports events contracts are swaps and conflict preemption applied). This question is far from settled. It is not therefore a sure outcome that the Defendants' federal defense is dispositive to the case. This further supports the Court's ultimate conclusion that this case does not belong in federal court.

The fourth sub-factor asks generally whether this question will control numerous other cases. The Court has no basis for finding that this is the case where the question in dispute involves the interpretation of Kentucky's gambling statutes. The Court can envision only one scenario in which such a decision would control, and that is a factually identical cause of action brought by a third party challenging the Defendants' actions in the Commonwealth of Kentucky. Any decision by this Court as to the interpretation of Kentucky's Loss Recovery Act in relation to the CEA necessarily only impacts parties bringing a challenge with a nearly identical factual predicate as this case. Mindful that state courts are presumed competent to apply federal law and that any doubts regarding federal jurisdiction should be construed in favor of remanding the case to state court, the Court ultimately finds that the federal issue in this case is not substantial.

### iii

Finally, the Court must weigh the final *Grable* factor and ask whether the exercise of jurisdiction would disturb any congressionally-approved balance of federal and state judicial responsibilities. The Court first looks to whether Congress provided a federal cause of action for the issue. *Mikulski*, 501 F.3d at 573. Plaintiff argues that Congress has made no provision for a federal cause of action permitting the recovery of unlawful gambling losses. [R. 20-1 at 10]. Defendants counter that the CEA does create private causes of action for parties injured by

certain violations of the CEA. [R. 26 at 17]. But plaintiff does not argue that Defendants have violated the CEA. It argues that the Defendants' behavior violates Kentucky's gambling laws. Where the Defendants suggest "this is heartland *Grable* territory," the Court thinks this is more aptly a question of Kentucky law. *Id.* The Court finds that the balance of judicial interests weighs heavily in favor of the state courts, who are better prepared to interpret their own law in this admittedly gray area.

Accordingly, the Court finds that no substantial federal question exists. This case "cannot be squeezed into the slim category [of cases that] *Grable* exemplifies." *Mikulski*, 501 F.3d at 574 (quoting *Empire Healthchoice*, 547 U.S. at 701).

**B**

The Defendants offer alternative theories for federal jurisdiction, neither of which are plausible. First, the Defendants argue that the Court enjoys jurisdiction under the Class Action Fairness Act. [R. 26 at 17–22]; [R. 27 at 20–24]. Plaintiff argues that none of the CAFA requirements are satisfied. [R. 28 at 9–13].

Congress passed the Class Action Fairness Act (CAFA) in 2005. Pub. L. No. 109-2 (codified as amended in scattered sections of Title 28). In passing CAFA, Congress "sought to relax the requirements of diversity jurisdiction in order to make it easier for plaintiffs to bring certain interstate class actions and mass actions in federal court." *Nessel ex rel. Michigan v. AmeriGas Partners, L.P.*, 954 F.3d 831, 834 (6th Cir. 2020) (citing *Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 165 (2014)). Under CAFA, a federal district court has original jurisdiction over a class action when three requirements are met: (1) the amount in controversy must exceed $5,000,000; (2) there is minimal diversity between the parties; and (3) the proposed class contains at least 100 members. 28 U.S.C. § 1332(d)(2)–(6). Critically, the

14

action must be a class action filed under Fed. R. Civ. P. 23 "or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." *Id.* §§ 1332(d)(2), 1332(d)(1)(B). The Sixth Circuit has held that the plain language of CAFA unambiguously refers to the definition of "class action" as articulated by Rule 23. *AmeriGas Partners*, 954 F.3d at 834–35.

Rule 23 specifies four requirements before a member of a class may sue or be sued by a representative party. The class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There must be "questions of law or fact common to the class" and the claims must be "typical of the claims" of the class. *Id.* 23(a)(2), (3). Finally, the party representative must "fairly and adequately protect the interests of the class." *Id.* 23(a)(4). "These four requirements—numerosity, commonality, typicality, and adequate representation—are the defining characteristics of Rule 23." *AmeriGas Partners*, 954 F.3d at 835.

The Court first evaluates the CAFA requirements. First, the amount in controversy requirement is met. The Complaint seeks to recover "for three times the amount of each gambler's unrecovered losses" and estimates those losses at "tens of millions of dollars." [R. 1 at 12]. Minimal diversity means that "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). Therefore, minimal diversity exists as the Plaintiff is diverse from the Kalshi and Robinhood defendants. The claim fails at the final stage because the "class" contains a single member – Kentucky Gambling Recovery LLC.

Herein lies the problem with Defendants' argument. There is simply no class, as Plaintiff "brings this case solely on its own behalf." [R. 28 at 9]. Kentucky law plainly allows for an LLC to bring a cause of action under the Loss Recovery Act. *Brown*, 617 S.W.3d at 801 ("our general definitions for statutes—KRS 446.010—provides guidance for our Court"); *see also* Ky. Rev.

15

Stat. § 446.010(33) ("Person may extend and be applied to . . . limited liability companies). Plaintiff does not claim to represent gamblers, and in fact openly denies representing particular individuals. [R. 28 at 12]. None of the traditional Rule 23 requirements are met. The class—one "person" seeking to benefit from the third-party Loss Recovery Act mechanism—is by definition not numerous. The claims relate only to Kentucky Gambling Recovery LLC, an entity whose sole purpose appears to involve litigating third-party claims under the Loss Recovery Act. *See* [R. 26 at 4–5]. As both parties infer throughout their briefing, Plaintiff's lawsuit is for the benefit of one "person"—Kentucky Gambling Recovery, LLC—and not any "gamblers" actually affected. For these reasons, the Court does not hesitate in finding that the defendants do not make out a plausible basis for removal under the Class Action Fairness Act.

## C

The Kalshi defendants, but not the Robinhood defendants, argue that the Court has jurisdiction under traditional diversity jurisdiction because Plaintiff fraudulently joined the Susquehanna and Webull defendants. [R. 27 at 15–20]. Complete diversity between the parties must exist such that no plaintiff is a citizen of the same state as *any* defendant. *V&M Star, LP v. Centimark Corp.*, 596 F.3d 354, 355 (6th Cir. 2010). The present dispute involves the doctrine of "fraudulent joinder," a canon that functions as a sort of exception to the complete diversity requirement. *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999). Under the fraudulent joinder doctrine, federal courts can remove a non-diverse defendant from the case if the case against that non-diverse defendant is "so frivolous that its only conceivable purpose is to destroy diversity and prevent removal." *Murriel-Don Coal Co. v. Aspen Ins. UK Ltd.*, 790 F. Supp. 2d 590, 592 (E.D. Ky. 2011). All disputed questions of fact and any ambiguities in the governing state law are resolved in favor of the party seeking remand. *Coyne*, 183 F.3d at 493.

16

Defendants bear a heavy burden in demonstrating fraudulent joinder. *Kent State Univ. Bd. of Trs. v. Lexington Ins. Co.*, 512 F. App'x 485, 489–90 (6th Cir. 2013). If Kentucky Gambling Recovery has even a "glimmer of hope," then the Court must remand the case back to the state court system. *Murriel-Don Coal Co.*, 790 F. Supp. 2d at 597. The Sixth Circuit requires the removing party to show that the case against the non-diverse defendant is frivolous by "establishing that the plaintiff has 'no colorable cause of action' against the non-diverse defendant." *Id.* at 594 (citing *Saginaw Hous. Comm'n v. Bannum, Inc.*, 576 F.3d 620, 624 (6th Cir. 2009)). The case remains in federal court only if the "claim is so frivolous that is has no hope of success" because such a finding begs the presumption that "the plaintiff made the claim for the sole purpose of preventing removal." *Id.* The Court resolves all disputed questions of fact in favor of the party seeking remand. *Coyne*, 183 F.3d at 493.

Neither side disputes that Plaintiff is diverse from the Robinhood defendants and the Kalshi defendants. The sole question, raised by Kalshi, is whether the plaintiff fraudulently joined Susquehanna International Group (SIG), Susquehanna Government Products (SGP), and Webull. It is undisputed that Webull Corporation, SIG, and SGP are citizens of Florida for the purposes of diversity jurisdiction. Defendants argue that Plaintiff has no colorable claim against Webull Corporation because it is a holding company, whereas Webull Financial LLC is the entity that actually facilitates transactions in event contracts. [R. 27 at 15]. As to the Susquehanna entities, defendants argue that "Plaintiff has no colorable claim that SIG and SGP are 'winners,' as required for a claim under Kentucky's Statute of Anne." *Id.* at 18.

The parties dispute whether plaintiff's theory for recovery under Kentucky's Loss Recovery Act reaches parties whose profit from the allegedly illicit gambling was indirect. *See id.* at 19; [R. 28 at 14]. Both parties cite the same case, *Commonwealth ex re. Brown v. Stars*

17

*Interactive Holdings (IOM) Ltd*. In *Brown*, the Commonwealth of Kentucky brought a civil action under the Loss Recovery Act against PokerStars, an online website that hosted illegal poker games. 617 S.W.3d at 796–97. PokerStars argued that they could not be sued under the statute because they were not the "winner" in any of the illegal real-money poker games. *Id.* at 798. Defendants follow this same line of thinking in arguing that SIG and SGP are not "winners" under the Loss Recovery Act. [R. 27 at 18].

The *Brown* decision gives Kentucky Gambling Recovery the "glimmer of hope" needed to defeat a fraudulent joinder assertion. *Brown* stands for the proposition that a party who takes a portion of the money lost by Kentuckians in the illegal wagers are "winners" under the Loss Recovery Act. 617 S.W.3d at 807. A party that is "jointly interested with the winner, in the stakes" who "receive[s] a certain amount of the result of the unlawful enterprise" exposes themselves to liability under the Loss Recovery Act. *Id.* at 806 (quoting *Triplett v. Seelbach*, 14 S.W. 948, 949 (Ky. 1890)). Where Plaintiff alleges that Susquehanna acts as a market maker buying and selling event contracts, it necessarily follows that Kentucky residents "almost always face off against a market maker on the other side of the ledger."  [R. 28 at 14]. Plaintiff further buttresses its argument by suggesting that Susquehanna, as a market maker, employs the same business model as the sportsbooks Kentucky prohibits. *Id.* It is not inconceivable that *Brown*'s expansive definition of a "winner" could include market makers who have a "joint[] interest[] in the winnings as wrongdoers."  617 S.W.3d at 806 (quoting *Triplett*, 14 S.W. at 949). Under this plausible reading of the *Brown* decision, Kentucky Gambling Recovery has a "glimmer of hope" that the activities of the Susquehanna defendants fall under the auspices of the Loss Recovery Act.[3]  The Court is therefore convinced that, as to the Susquehanna entities, the defendants have

---

[3] Because the Court establishes that the Susquehanna defendants are not fraudulently joined, complete diversity is necessarily lacking and it is therefore unnecessary to repeat the fraudulent joinder analysis for Webull Corporation.

18

not met the "heavy burden" in demonstrating fraudulent joinder required to establish diversity jurisdiction under 28 U.S.C. § 1332(a).

**D**

Having decided the appropriateness of remanding this case to the Franklin Circuit Court, the Court turns to the final issue of whether to issue attorneys' fees. Kentucky Gambling Recovery argues that it is entitled to fees pursuant to 28 U.S.C. § 1447(c). [R. 20-1 at 23]. Defendants naturally oppose this request. [R. 26 at 23; R. 27 at 24].

"An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The Supreme Court has held that the fee provision in the federal removal statute does not create a presumption in favor of awarding or denying fees of remand. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 138–39 (2005). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Id.* at 141.

By any reading, the Defendants' arguments in opposition to the Motion to Remand were reasonable. Defendants raised significant issues, particularly in furtherance of their federal question theory, that required careful review by this Court. This case was hardly a dead-on-arrival removal, and both sides sparred ably in pursuit of their respective objectives. Although the Court is not convinced that it has jurisdiction to hear this case, it is nonetheless certain that this is not a case where an award of attorneys' fees under 28 U.S.C. 1447(c) is justified.

**III**

Federal courts are courts of limited jurisdiction and can hear only those cases authorized by the U.S. Constitution and federal statute. After careful review of the well-argued contentions

19

made by the parties, the Court is not convinced that federal question jurisdiction or diversity jurisdiction exists warranting this case's continuation in federal court. Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED**:

    1.    Plaintiff's Motion to Remand **[R. 20]** is **GRANTED**.

    2.    This case **WILL BE REMANDED** back to the Franklin Circuit Court.

    3.    This action is **STRICKEN** from the Court's docket.

This 3d day of March, 2026.

Gregory F. Van Tatenhove
United States District Judge